NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KANAL V. GASTON<br><br>    Plaintiff,<br><br> v.<br><br>STATE OF NEW JERSEY DEPARTMENT<br>OF LAW AND PUBLIC SAFETY,<br>DIVISION OF STATE POLICE<br><br>    Defendant. | CIVIL NO. 05-3006 (SRC)<br><br>**OPINION** |

**CHESLER, District Judge**

  **THIS MATTER** comes before the Court on a Motion to Dismiss by Defendant State of New Jersey Department of Law and Public Safety, Division of State Police (docket entry # 6). This Court, having considered the papers submitted by the parties, for the reasons set forth below, and for good cause shown, **PARTIALLY GRANTS AND PARTIALLY DENIES** Defendant's Motion.

**I. BACKGROUND OF THE CASE**

  On June 10, 2005, Plaintiff Kanal V. Gaston ("Gaston") filed the current suit against the Defendant, State of New Jersey, Department of Law and Public Safety, Division of State Police ("NJ State Police"). The suit arises from the Plaintiff's application to become a state trooper

1

with the NJ State Police. Gaston applied for a position with the NJ State Police in early 2001 and underwent a competitive examination. (Compl. at 1.) Gaston proceeded through the application process, completing an initial Physical Qualification Test ("PQT") and interview, as well as submitting to a personnel background investigation. (Id.) Gaston alleges that he was interviewed by a state police investigator, Trooper Lauther ("Lauther"), in December 2001, and satisfactorily completed the required background investigation. (Id. at 1-2.) In October 2002, Gaston claims that, upon reporting for his second PQT, he was given a Supplemental Investigation Questionnaire to complete due to the amount of time that had passed between his initial background investigation and the subsequent PQT. (Id. at 2.) Gaston notes that he passed the second PQT. (Id.)

      State Trooper Manzuik ("Manzuik") was assigned to interview Gaston about the information provided on this Supplemental Investigation Questionnaire. (Id.) Gaston claims, however, that Manzuik improperly initiated an entirely new background check on him because Gaston's mother and sister in Haiti were never contacted as part of the first background investigation. (Id.) Gaston alleges that, when he tried to explain that Lauther couldn't speak to his mother or sister in Haiti as part of the initial background check because neither of them has a telephone, Manzuik and his partner, Sgt. Smith ("Smith"), accused him of lying and claimed that Lauther did not do a good enough job on his initial investigation of Gaston because "he did not know how to catch Haitians and other foreigners who lie and cheat the system." (Id.)

      Gaston subsequently received a letter from the NJ State Police dated March 27, 2003 informing him that he did not meet the Division standards for employment, but invited him to re-apply for a position without re-taking the written exam. (Id. at 3.) Gaston submitted a complaint

to the U.S. Equal Employment Opportunity Commission ("EEOC") on August 30, 2003.[1]  (Pl.

Br. at Ex. M-1)  In his complaint to the EEOC, Gaston noted:

> I applied in 2001 for the position of New Jersey State Trooper.  I received a letter, dated March 27, 2003, that I was denied placement.
>
> I was informed by Major Carmelo V. Huertas, Commanding Officer, that I was not selected because I failed to meet the standards of selection.  Specifically, Respondent states they could not contact my mother in Haiti because she does not have a telephone.
>
> I believe that I have been discriminated against because of my national origin, Haitian, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Def. Br. at Ex. A.)  On February 11, 2005, the EEOC informed Gaston that their investigation found no evidence of discrimination against him by the NJ State Police, and that he would be issued a "Right to Sue" letter shortly.  On February 22, 2005, the EEOC issued Gaston a Right to Sue letter.[2]  On June 10, 2005, Gaston filed the Complaint in the current case, alleging that Trooper Manzuik and Sgt. Smith discriminated against him in the hiring process on the basis of his national origin, and that the claims made by the NJ State Police in response to his EEOC

---

[1] A court may properly consider undisputedly authentic documents attached to the motion papers of either party in deciding a Rule 12(b)(6) motion to dismiss. See In re Donald J. Trump Casino Securities Lit., 7 F.3d 357, 368 n. 9 (3d Cir.1993), cert. denied, 510 U.S. 1178 (1994); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993), cert. denied, 510 U.S. 1042 (1994).

[2] The Defendants initially challenged the timeliness of Gaston's suit, alleging first that he failed to file his complaint with the EEOC within 180 days and that he failed to file a complaint with the District Court within 90 days of receiving his Right to Sue letter from the EEOC as required.  While the current suit was filed more than 180 days after the original EEOC Right to Sue letter was sent to Gaston, he contends that he did not receive the letter until April 13, 2005 since the original letter was sent to his old address in New York, and a new letter was not sent to his current address until March 11, 2005.  (Pl. Br. at 2.)  Because Gaston has provided documentation in his answering brief with the Court on the current motion which supports the timeliness of both his complaint with the EEOC and his filing of his complaint with this Court, the Defendant has withdrawn their challenge to the timeliness of Gaston's actions.

complaint constituted libel and slander.  Gaston is seeking "money damages in the amount of $50 million," to have the NJ State Police "establish and enforce written policies and procedures to prevent the disparate treatment of foreign born applicants from poor or third world countries," and "any other relief which the [C]ourt deems appropriate."  (Compl. at 4.)

## II. MOTION TO DISMISS

The Defendant, pursuant to Fed. R. Civ. P. 12(b)(6), filed a motion to dismiss the Plaintiff's claims.  In their briefs, the Defendant raises three points to contest the Plaintiff's claims: (1) the Plaintiff's claims for incidents alleged to have occurred after March 27, 2003, and allegations against individuals against whom no claims were asserted in the Plaintiff's original EEOC complaint, should be dismissed for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 2000e; and (2) the Plaintiff's state law tort claims should be dismissed for failure to comply with the notice provisions of the New Jersey Tort Claims Act; and (3) any claims for punitive damages must be dismissed as barred by N.J.S.A. 59:9-2.  The Court will address each of the Defendant's claims in turn.

**A.    The Plaintiff's Claims for Incidents Alleged to Have Occurred After March 27, 2003 and his Claims Against Non-Parties Trooper Manzuik and Sgt. Smith are not Barred for Failure to Exhaust Administrative Remedies.**

The Defendant's contest the inclusion in the Plaintiff's complaint of incidents allegedly occurring after March 27, 2003 (the date that Gaston received the letter informing him that he did not meet the hiring standards to be a state trooper) and for allegations of disparate treatment and discrimination against non-parties Manzuik and Smith.  The Defendant claims that, because these

claims were not brought in the original EEOC complaint Gaston formally filed on December 31, 2003, he may not bring them as part of the current Complaint.  (Def. Br. at 13.)

Before a Plaintiff may bring an EEOC suit in federal court, he must first exhaust the available administrative procedures, as set forth in 42 U.S.C. § 2000e-5.  While this procedure is not jurisdictional, an aggrieved party must fully exhaust their administrative remedies before suing in federal court.  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398 (1982).  As the Third Circuit noted in Anjelino v. New York Times, 200 F.3d 73 (3d Cir. 1999):

> When an "aggrieved person" files a claim with the EEOC, the agency notifies the employer and conducts an investigation. If the charge reasonably appears to be true, the EEOC attempts conciliation. If conciliation does not succeed, the EEOC notifies the aggrieved party of his or her right to bring suit. The preliminary step of the filing of the EEOC charge and the receipt of the right to sue notification are "essential parts of the statutory plan, designed to correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action."  Because the aim of the statutory scheme is to resolve disputes by informal conciliation, prior to litigation, suits in the district court are limited to matters of which the EEOC has had notice and a chance, if appropriate, to settle.

Id. at 93 (citing Ostapowics v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976)) (internal citations omitted).

The Defendant notes that, in his Charge of Discrimination filed with the EEOC on December 31, 2003, Gaston "alleges that on March 27, 2003, he was discriminated against on the basis of his national origin in violation of Title VII."  (Def. Br. at 14.)  In addition to his allegations of discrimination against him stemming from the Defendant's hiring process, Gaston's Complaint also alleges that the claims made "by the New Jersey State Police represent slander and libel" and the NJ State Police's statements in response to the EEOC inquiry were "unjust and malicious, and exposed [him] to public contempt," were "intentionally designed to

5

defame [him], as well as conveyed an unjust or unfavorable impression of him, which seriously injured [his] professional aspirations and career." (Compl. at 3-4.) Gaston's Complaint also contains allegations of "disparate treatments and discriminations" by Trooper Mazuik and Sgt. Smith during their Supplemental Questionnaire Investigation, "simply because of [his] national origin." (Compl. at 3.) The Defendant challenges these allegations on the grounds that they "impermissibly expand the scope of the Complaint beyond the allegations as set forth in the Charge of Discrimination." (Def. Br. at 14.) Because Gaston was not issued a "Right to Sue Letter" regarding these claims, the Defendant claims that he has failed to "exhaust his administrative remedies under 42 U.S.C. 2000e concerning these claims and, therefore, all such claims are barred." (Def. Br. at 15.)

It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief. McKart v. United States, 395 U.S. 185, 193 (1969). The Third Circuit has held that the purpose of this exhaustion requirement "is to promote administrative efficiency, 'respect[ ] executive autonomy by allowing an agency the opportunity to correct its own errors,' provide courts with the benefit of an agency's expertise, and serve judicial economy by having the administrative agency compile the factual record." Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997) (quoting Heywood v. Cruzan Motors, Inc., 792 F.2d 367, 370 (3d Cir.1986)). "The causes of action created by Title VII do not arise simply by virtue of the events of discrimination which that title prohibits. A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim to the EEOC [ ] for conciliation or resolution." Hornsby v. U.S. Postal Service, 787 F.2d 87, 90 (3d Cir. 1986).

A victim of discrimination, however, "is not required to exhaust administrative remedies with respect to a claim concerning an incident which falls within the scope of a prior EEOC complaint or the investigation which arose out of it, provided that the victim can still bring suit on the earlier complaint." Waiters v. Parsons, 729 F.2d 233, 235 (3d Cir. 1984). An EEOC investigation may look beyond the specific allegations in the formal complaint and examine an employer's entire conduct. Id. Events subsequent to a filed complaint may be considered as "fairly encompassed within that complaint, either where the incident (1) falls within the scope of a prior EEOC complaint, or (2) falls within the scope of the EEOC 'investigation which arose out of it.'" Robinson, 107 F.3d at 1025 (quoting Waiters, 729 F.2d at 235)). In the present case, Gaston's allegations of libel, slander and defamation all arise directly out of the EEOC investigation of his charges of disparate treatment. These all allegedly stem from the NJ State Police's response to the EEOC in their investigation of his charges and all can be considered fairly encompassed within Gaston's original EEOC complaint. Gaston's failure to separately pursue administrative remedies for these alleged offenses, therefore, does not serve to bar him from seeking remedy with this Court.

The Defendants also challenge the inclusion of allegations against Trooper Mazuik and Sgt. Smith on the grounds that neither of them were specifically identified in Gaston's EEOC filing on December 31, 2003. (Def. Br. at 15.) The purpose of requiring a plaintiff to resort to EEOC administrative procedures before bringing a private suit is twofold: (1) to give notice to the charged party and (2) to promote voluntary compliance without litigation. Glus v. G.C. Murphy Co., 562 F.2d 880, 888 (3d Cir.1977). The Third Circuit, in Glus, stated that in determining whether a plaintiff who failed to name a defendant as a party in an EEOC charge

7

could nonetheless bring a private suit against that party, a district court should consider: 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained by the time of the filing of the EEOC complaint;  2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;  3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;  4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.  Id.  Additionally, the Court may consider whether the factual statements of the charge puts the unnamed defendant on notice of her alleged role in the discrimination.  Pittman v. LaFontaine, 756 F.Supp. 834, 847 (D.N.J.1991).  While none of these factors is independently decisive, they should be considered as a whole in light of the purposes of the administrative procedure and the interests of the parties.  Glus, 629 F.2d at 251, vacated on other grounds *sub nom*. Retail, Wholesale and Department Store Union, AFL-CIO v. G.C. Murphy, 451 U.S. 935 (1981).

In the current case, the Plaintiff first filed his complaint with the EEOC by submitting an "Intake Questionnaire" on August 30, 2003.  (Pl. Br. at Ex. M1.)  On this questionnaire, Gaston specifically identifies Trooper Manzuik and Sgt. Smith as informing him that "because I was born in Hati - a foreign country - obtaining information from my relative was not possible. Therefore, [I] could not be hired."  (Id.)  Given the nature of Gaston's complaint to the EEOC, it is clear that Trooper Manzuik and Sgt. Smith's role could easily be ascertained by the Defendant and their participation in any ensuing EEOC investigation of Gaston's charges would have been

necessary.  Furthermore, Gaston identified these two non-parties, by name, in his initial filing with the EEOC, putting them both on notice of Gaston's claims.  Therefore, the Court finds no reason why the allegations against them in the Plaintiff's Complaint should be barred under 42 U.S.C. 2000e for failing to exhaust administrative remedies against these two non-parties.  Accordingly, the Defendant's Motion to Dismiss the Plaintiff's claims for incidents allegedly occurring after March 27, 2003 and to dismiss claims arising from the alleged actions of non-parties Trooper Manzuik and Sgt. Smith is **DENIED**.

**B.**     **The Plaintiff's State Law Tort Claims are Dismissed for Failure to Comply with the Notice Provisions of the New Jersey Tort Claims Act.**

The Defendant seeks to dismiss the Plaintiff's state law tort claims based on Gaston's failure to comply with the notice of claim provisions of the New Jersey Tort Claims Act ("TCA"), N.J.S.A. 59:8-1, *et. seq.*  The TCA, which was originally enacted by the New Jersey legislature in 1972, abrogated the traditional doctrine of sovereign immunity and established a uniform and comprehensive statutory scheme for adjudicating tort claims against public entities and their employees.  See Feinberg v. State of New Jersey, 137 N.J. 126, 133 (1994) (observing that the TCA "modifies the doctrine of sovereign immunity and creates limited situations in which parties may assert tort claims against public entities.").  Consistent with the TCA's legislative goal of restricting governmental liability in tort, the TCA provides that, in order to maintain a tort claim against a public entity or public employee, a plaintiff must file a notice of claim with the appropriate public entity within 90 days of the accrual of a cause of action.  See N.J.S.A. 59:8-8.  A plaintiff who fails to file notice with the appropriate state agency within the 90-day period is "forever barred from recovering against [the] public entity or employee."  Id.

While a plaintiff may be permitted by the court to file a notice of claim after the 90-day period, provided he applies to the court for an extension within a year of the date when the claim accrued, see N.J.S.A. 59:8-9, "judicial discretion to extend the time for filing of the requisite notice does not survive the passage of one year following the accrual date of the claim." Hill v. Board of Educ. of Middletown Twp., 183 N.J.Super. 36, 39 (App.Div.1982); see also Iaconianni v. New Jersey Turnpike Auth., 236 N.J.Super. 294, 298 (App.Div.1989).

The central purpose of these notice-of-claim provisions is two-fold: "'(1) to expedite investigation with the hope of reaching nonjudicial settlement'; and (2) 'to protect the public entity's access to current information about the incident giving rise to the claim.'" Greenway Development Co., Inc., 163 N.J. 546, 552 (2000) (quoting Reale v. Township of Wayne, 132 N.J.Super. 100, 109 (Law Div. 1975)) (citations omitted). In his Complaint, Gaston asserts State law tort claims against the Defendant for libel, slander, and defamation. (Compl. at 3-4.) Nowhere in Gaston's Complaint, however, is an allegation that he filed a Notice of Tort Claim, as required by the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 - 12-3.

Under the Tort Claims Act, "parties suing public entities must comply with strict requirements for notifying and suing those entities." Feinberg v. State, D.E.P., 137 N.J. 126, 134. In particular, the Tort Claims Act states that:

> No action shall be brought against a public entity under this act unless a claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter.

N.J.S.A. 59:8-3. This section not only bars any suit in which there has not been compliance with the notice provisions of N.J.S.A. 59:8-4, but also any suit in which a plaintiff has failed to comply with a public entity's own notice of claim form, which may require more information

than specified in 59:8-4, as authorized by N.J.S.A. 59:8-6.  See Navarro v. Rodriguez, 202 N.J.Super. 520, 495 (Law Div.1984).  The filing of notice is a statutory procedural prerequisite to filing suit.  N.J.S.A. 59:8-8.  Absent notice, an action may not proceed.  Guzman v. City of Perth Amboy, 214 N.J.Super. 167, 171-72 (App.Div.1986).

Gaston notes in his answering brief that he filed "a complaint with the State of New Jersey's highest legal department, the Office of the Attorney General," (Pl. Br. at 2) and attaches a letter he received from the Attorney General's Office noting that their office was "prepared to investigate [his] allegations of workplace discrimination."  (Pl. Br. at Ex. M6.)  Filing a general complaint with the Attorney General's Office regarding alleged employment discrimination does not comply with the requirements of N.J.S.A. 59:8-4 for state law tort claims of libel, slander, and defamation against a public entity like the NJ State Police.  While several New Jersey courts have held that substantial, rather than strict, compliance with the notice requirements of the Tort Claims Act may be satisfactory, see, e.g., Tuckey v. Harleysville Insurance Co., 236 N.J.Super. 221 (App.Div.1989); Navarro v. Rodriguez, 202 N.J.Super. 520 (Law Div.1984); Dambro v. Union County Park Commission, 130 N.J.Super. 450 (Law Div.1974), "[s]ubstantial compliance cannot be predicated upon no compliance, such as failure to answer any of the questions permitted by N.J.S.A. 59:8-6."[3]  Navarro, 202 N.J.Super. at 530 (emphasis supplied).

---

[3] N.J.S.A. 59:8-4 permits public entities to require notice of any tort claims against them to include:

    a.    The name and post office address of the claimant;
    b.    The post-office address to which the person presenting the claim desires notices to be sent;
    c.    The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;
    d.    A general description of the injury, damage or loss incurred so far as it may

"Cases which have excused strict statutory compliance generally involve claimants who have been diligent in their efforts at compliance." Sinclair v. Dunagan, 905 F.Supp. 208, 212 (D.N.J. 1995) (citing Fienberg, 137 N.J. 126 and Dambro, 130 N.J.Super. at 450)).  This is not a case of a "diligent claimant" who attempted to place the public entity on timely notice of his claims but was prevented from doing so by error or delay of the public entity.  There is nothing in the claims or papers presented to this Court that indicate that Gaston gave any prior notice to the Attorney General's Office (or any other associated public entity) regarding his state law claims of libel, slander, and defamation, nor do the papers support any claim that Gaston even attempted to give such notice.  Accordingly, the Defendant's Motion to Dismiss these state law tort claims for failure to Comply with the Notice Provisions of the New Jersey Tort Claims Act is **GRANTED**.

C.     **The Defendant's Argument that Claims for Punitive Damages are Barred by N.J.S.A. 59:9-2 is Moot.**

In his answering brief, Gaston amended his damage claims, claiming that he was seeking twenty five million dollars for "past and future earnings and benefits," twenty five million dollars for "compensatory and other damages," twenty five million dollars for "punitive damages," and an additional twenty five million dollars for "tort law violations" as well as "any other monetary and non-monetary relief this [C]ourt deems appropriate." (Pl. Br. at 3.)  The Defendant correctly

---

|     |     |
| --- | --- |
|     | be known at the time of presentation of the claim; |
| e.  | The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and |
| f.  | The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. |

N.J.S.A. 59:8-4.

notes that, under New Jersey law, however, punitive damages cannot be awarded against a public entity. (Def. Br. at 20 (citing N.J.S.A. 59:9-2(c)). Because the state law tort claims in this case have been dismissed for failure to comply with the notice provisions of the TCA, however, the Defendant's point regarding punitive damages for Gaston's state law tort claims is moot.[4] Accordingly, the Defendant's Motion to Dismiss the Plaintiff's claims for punitive damages arising from his state tort law claims is **DENIED** as moot.

### III. CONCLUSION

For the reasons stated above, and for good cause shown, the Court **PARTIALLY DENIES and PARTIALLY GRANTS** the Defendant's Motion to Dismiss. An appropriate form of order will be filed herewith.

Date:   April 5, 2006

s/Stanley R. Chesler<br>Stanley R. Chesler, U.S.D.J.

---

[4] While the Defendant's motion only addressed the issue of punitive damages for the Plaintiff's state law tort claims under the TCA, it is worth noting that, to the extent that any claims in this matter can be construed as claims for punitive damages under Title VII, government agencies like the NJ State Police are expressly exempted from punitive damage claims under Title VII. 42 U.S.C. § 1981a(b)(1) (allowing limited punitive damages "against a respondent (*other than a government, government agency or political subdivision*)") (emphasis added). See also Merritt v. Delaware River Port Authority, 1998 WL 827320, *1 (E.D.Pa. 1998) ("The 1991 Amendments to Title VII expressly exempt governments, governmental agencies, and political subdivisions from liability for punitive damages under Title VII.").