**[NOT FOR PUBLICATION]**

**[46, 51, 52]**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KANAL V. GASTON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 05-cv-03006 (FLW) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| STATE OF NEW JERSEY, | : | |
| DEPARTMENT OF LAW AND | : | |
| PUBLIC SAFETY, DIVISION | : | |
| OF STATE POLICE | : | |
| | : | |
| | : | **OPINION** |
| Defendant. | : | |
| | : | |
| | : | |

**WOLFSON, United States District Judge**

Presently before the Court are two Motions for Summary Judgment.  The first Motion is brought by Defendant State of New Jersey, Department of Law and Public Safety, Division of State Police (the "New Jersey State Police"), for Summary Judgment to Dismiss pro se Plaintiff Kanal V. Gaston's ("Gaston") claims, under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq., and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 et seq., that he was discriminated against based on

his national origin.[1]  The second Motion is presented to the Court by Plaintiff and consists of:  (1) opposition to Defendant's Motion for Summary Judgment; (2) a cross motion for Summary Judgment on his claims against Defendant; (3) a request for injunctive relief directing Defendant to remove all of Plaintiff's personal information from its papers filed with the Court; (4) a request for injunctive relief to prevent Defendant from defaming Plaintiff in the future; and (5) a request for an extension to file additional claims against any individuals or entities who have violated Plaintiff's protected rights under the United States Constitution, New Jersey Constitution, New York Constitution, New Jersey's Tort Claims Act ("NJTCA"), NJLAD, Conscientious Employee Protection Act ("NJCEPA") and for all tort law violations allegedly uncovered during discovery.

     The Court finds that Plaintiff's claims are meritless; Plaintiff has failed to show that he was qualified for the position with the New Jersey State Police from which he was rejected, and thus, cannot establish a prima facie case of employment discrimination.  Accordingly, Defendant's Motion for Summary Judgment dismissing Plaintiff's Complaint, and all counts contained therein, is granted.  For similar reasons, Plaintiff's Cross Motion for Summary Judgment is denied.  The Court grants in part and denies in part Plaintiff's request for Injunctive Relief:  Plaintiff's request for a redaction of personal information present in Defendant's filed papers is granted; but, Plaintiff's request for a prohibition against future acts of defamation is denied as futile.  Finally, the Court declines to allow Plaintiff another bite at the apple by

---

[1]As discussed infra, pro se Plaintiff's Complaint is vague and cites to no statutory authority for bringing claims against Defendant, however the Court reads his Complaint liberally and analyzes his allegations under the guise of Title VII and NJLAD.  (See Compl.; EEOC Dismissal and Notice of Rights Letter, Feb. 22, 2005).

allowing him an extension to file additional claims.  Indeed, the same request was already denied by Judge John J. Hughes, U.S.M.J., in a court order.

## II.    PROCEDURAL HISTORY

On or about January 5, 2004, Plaintiff filed a Charge of Discrimination, Charge Number 170-2003-02521, with the Equal Employment Opportunity Commission ("EEOC"), Philadelphia District Office. (Kenneth B. Goodman Decl., Aug. 8, 2007, Ex. Q, EEOC Charge of Discrimination). The particulars of Plaintiff's EEOC Charge, in their entirety, are as follows:

> I applied in 2001 for the position of New Jersey State Trooper.  I received a letter, dated March 21, 2003, that I was denied placement.
>
> I was informed by Major Carmelo V. Huertas, Commanding Officer, that I was not selected because I failed to meet their standards of selection. Specifically, Respondent [New Jersey State Police] states they could not contact my mother in Haiti because she does not have a telephone.
>
> I believe I have been discriminated against because of my national origin, Haitian, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Id.  On or about February 22, 2005, the EEOC issued a Dismissal and Notice of Rights letter to Plaintiff with respect to EEOC Charge Number 171-2003-02521. (See Compl.) Through this notice, the EEOC informed Plaintiff that it was closing its file on this Charge and advised Plaintiff that he "may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court" within 90 days of his receipt of the notice. (Id.)

Plaintiff filed a Complaint, pro se, in the United States District Court for the District of New Jersey on June 10, 2005.  Plaintiff's claims arise from the denial of his application to become a New Jersey State Trooper.  The Summons and Complaint was received by the

New Jersey State Police on or about October 24, 2005.  The only named defendant is the New Jersey State Police. (Compl.).  Plaintiff's cause of action, as set forth in the Complaint, is based upon his allegations that he was discriminated against because of his national origin in the New Jersey State Police hiring process in violation of Title VII of the Civil Rights Act of 1964, as amended, and that the response of the Defendant to his EEOC Charge of Discrimination constituted libel and slander under State law. (Compl. p.3; see also, Goodman Decl., Ex. Q, EEOC Charge of Discrimination; Goodman Decl., Ex. F, Kanal V. Gaston Dep. 136:2-137:3, Feb 22, 2007).

On November 15, 2005, the Court entered a Notice of Call for Dismissal Pursuant to Fed. R. Civ .P. 4(m).  On December 21, 2005, an order was entered discharging the call for dismissal, and granting the defendant until January 9, 2005, to answer, move or otherwise reply to Plaintiff's Complaint. On January 9, 2006, a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) was filed on behalf of the Defendant in lieu of an answer.  On April 5, 2006, the Court filed an opinion and an order granting in part and denying in part the Defendant's 12(b)(6) Motion to Dismiss. Specifically, the Court dismissed Plaintiff's State law claims for failure to comply with the notice provisions of the New Jersey Tort Claims Act, N.J.S.A. 59:8-1, et seq. Defendant's Motion to Dismiss Plaintiff's State law claim for punitive damages was denied as moot because the State law tort claims were dismissed. (Doc. Nos. 10, 11, Order and Op., Honorable Stanley R. Chesler, U.S.D.J., April 5, 2006).

An Answer and Affirmative Defenses were filed on behalf of the Defendant on April 11, 2006.  On or about April 17, 2006, Plaintiff filed an application for pro bono counsel. Plaintiff's application for the appointment of pro bono counsel was denied by order filed June 19, 2006.  An

-4-

Initial Conference was held on May 24, 2006, at which time, the Court ordered, in part, that any

motion to amend the pleadings to add new parties or to amend the pleadings must be filed no

later than September 22, 2006.

On or about April 10, 2007, Plaintiff filed a motion for an extension of time to file certain

claims and to amend the complaint.  Said motion was denied as to both issues by an order filed

June 18, 2007 by the Honorable John J. Hughes, U.S.M.J.  On or about June 25, 2007, Plaintiff

filed a Notice of Appeal with the United States Court of Appeals for the Third Circuit as to the

Court's June 18, 2007 order.  By letter dated July 2, 2007, the Office of the Clerk-Legal Division

for the United States Court of Appeals for the Third Circuit informed Plaintiff that the appeal,

docketed as C.A. No. 07-2895, was being submitted to a panel of the Court for possible dismissal

due to a jurisdictional defect.  On October 11, 2007, an order was entered by the Third Circuit

dismissing Plaintiff's appeal for lack of jurisdiction.  No appeal from the Magistrate Judge's

ruling was filed with this Court.

On August 8, 2007, Defendant filed a Motion for Summary Judgment seeking dismissal

of Plaintiff's Complaint in its entirety.  On September 11, 2007, Plaintiff filed opposition papers

and a cross-motion for Summary Judgment.  In addition, Plaintiff requests "an extension to file a

claim or claims over 90 days against entities and individuals under NJTCA, NJLAD, CEPA,

U.S., N.J., and N.Y. constitutions, and for tort law violations discovered during discovery."[2]

---

[2]It is unclear whether Plaintiff is asking for an extension of the 90 days allowed in the
EEOC "Dismissal and Notice of Rights" letter to file suit, or whether he is asking for leave of the
Court to file additional claims within an additional 90 days.  (See Compl.; EEOC Dismissal and
Notice of Rights Letter, Feb. 22, 2005).  Either way, Plaintiff's request is denied.  See infra, pp.
29-30.
    A ninety-day limitations period for filing a complaint in federal court is imposed on a
potential plaintiff from the date of receipt of the Right to Sue Letter. See Burgh v. Borough

(Pl.'s Br. p.42).   Finally, Plaintiff seeks  injunctive relief: directing Defendant to redact personal

information from its filed documents with the Court; and preventing Defendant from defaming

Plaintiff. On September 21, 2007 Defendant filed a letter with the Court indicating that it would

rely on its original moving papers and not file a reply.

## II.    FACTUAL BACKGROUND

Plaintiff Kanal V. Gaston Plaintiff was born in Port Au Prince, Haiti on June 22, 1970.

(Goodman Decl., Ex. A; Gaston Dep., 33:1-4).   As set forth in detail below, on or about March

15, 2001, Plaintiff submitted an initial application for appointment as a recruit in the New Jersey

State Police Academy.   (Goodman Decl., Ex. C, Initial Application).   On or about August 29,

2001, Plaintiff completed a New Jersey State Police background investigation questionnaire.

(Goodman Decl., Ex. D, Background Investigation Questionnaire).   Gaston proceeded through

the application process, completing an initial Physical Qualification Test ("PQT") and interview,

as well as submitting to a personnel background investigation. (Compl. at 1).   Gaston alleges that

he was interviewed by a state police investigator, Trooper Lauther ("Lauther"), in December

2001, and satisfactorily completed the required background investigation. (Id. at 1-2.)   In October

---

Council of the Borough of Montrose, 251 F.3d 465, 470 (3d Cir. 2001) (generally, a private
action must be filed within 90 days of the complainant's receipt of the EEOC's decision not to
pursue the administrative charge). The ninety day period for filing the court action is treated as a
statute of limitations. Id. at 470.  The Third Circuit has "strictly construed the 90-day period and
held that, in the absence of some equitable basis for tolling, a civil suit filed even one day late is
time-barred and may be dismissed."  Id.  "Generally, the ninety-day filing period begins to run on
the day the right to sue letter is received at the address that a plaintiff has provided the EEOC."
Hill v. Chezik Imports, 869 F.2d 1122 (8th Cir. 1989).  Plaintiff filed his Complaint in federal
court on June 10, 2005.  Even if the Court viewed the date Plaintiff filed his Complaint as the
date which he received the right to sue letter the statutory limitations period had long expired by
the time Plaintiff filed this Motion on September 11, 2007.  Thus, Plaintiff cannot be granted
leave to file additional Title VII claims.

2002, Gaston claims that, upon reporting for his second PQT, he was given a supplemental investigation questionnaire to complete due to the amount of time that had passed between his initial background investigation and the subsequent PQT. (Id. at 2.) Gaston notes that he passed the second PQT. (Id.)  On or about October 29, 2002, Plaintiff completed the New Jersey State Police background investigation supplemental questionnaire. (Goodman Decl., Ex. E, Supp. Background Questionnaire).

On October 22, 2002, Trooper Jafca D. Mandziuk ("Mandziuk"), New Jersey State Police Badge Number 5739, was assigned to perform a supplemental background investigation in connection with Plaintiff's application to the New Jersey State Police. (Goodman Decl., Ex. G, Mandziuk Dep., 7:11-15, 10:20-11:6, 28:6-20, June 12, 2007).  Trooper Mandziuk was assigned to interview Gaston about the information provided on this supplemental investigation questionnaire. (Id.) Gaston claims, however, that Mandziuk improperly initiated an entirely new background check on him because Gaston's mother and sister in Haiti were never contacted as part of the first background investigation. (Compl.) Gaston alleges that, when he tried to explain that Lauther couldn't speak to his mother or sister in Haiti as part of the initial background check because neither of them has a telephone, Mandziuk and his partner, Sgt. Smith ("Smith"), accused him of lying and claimed that Lauther did not do a good enough job on his initial investigation of Gaston because "he did not know how to catch Haitians and other foreigners who lie and cheat the system." (Id.)  On November 21, 2002, Plaintiff sent a letter to Trooper Mandziuk asking him to remove his name from the hiring process if a decision could not be made based on the information he had already provided. (Goodman Decl., Ex. B, Letter).  The supplemental investigation was completed on or about January 3, 2003. (Mandziuk Decl. ¶ 6).

The supplemental investigation revealed numerous discrepancies in Plaintiff's application and in the background investigation questionnaires he had completed. On a form entitled "Disqualification Background Investigations," Trooper Mandziuk, as the Investigator, listed six reasons why Plaintiff should be disqualified from the New Jersey State Police selection process. (Mandziuk Dep.,40:5-42:18). The reasons presented by Trooper Mandziuk included: (1) False Statements (Fraud) to the Social Security Administration; (2) Omitted filing for divorce; (3) Omitted School Transcripts; (4) Physical Altercation With Wife; (5) Auto Insurance Fraud; (6) Fraud In Applying for Florida Driver's License. (Goodman Decl., Exhibit S).

When Trooper Mandziuk began the supplemental background investigation of Plaintiff, Mandziuk scheduled a meeting with him, to be held on October 29, 2002. Plaintiff was late to the meeting. (Gaston Dep., 21:17-22:3, 25:6-15; Mandziuk Decl., ¶14). Plaintiff concedes that punctuality is a characteristic that the New Jersey State Police would be looking for in a state trooper. (Gaston Dep., 24:9-13).

The supplemental background investigation revealed that Plaintiff, who had stated in the initial background investigation questionnaire that he was married to Yvette Erausquin, had filed for divorce prior to October 29, 2002. (Gaston Dep., 51:3-5; Mandziuk Decl., ¶11). Both Plaintiff and Ms. Erausquin retained a lawyer for the purpose of filing for divorce prior to October 29, 2002. (Gaston Dep., 54:8-16). Section C, page 2 of 21, of The New Jersey State Police background investigation supplemental questionnaire signed by Plaintiff on October 29, 2002, directs the applicant to "[l]ist any changes in your social status, explain fully, give names, dates of birth, addresses, telephone numbers, employers including address and telephone numbers, court information including docket numbers: (marital status, dating relationships,

engagements, separations, annulments, divorces; children; including biological, adoptive, foster, stepparent or legal guardian, etc.)" (Goodman Decl., Ex. E; Gaston Dep., 51:20-52:12).  Plaintiff contends that he did not lie on the application because while he had already filed for a divorce, his divorce was not yet final.  Plaintiff did not list his filing for divorce on the supplemental questionnaire. (Gaston Dep., 51:3-8; Mandziuk Dep., 57:8-58:1, 61:3-13).

Next, Plaintiff did not list or provide transcripts for all schools he attended, as was required in his background investigation questionnaire.  Trooper Mandziuk's investigation revealed that Plaintiff attended Ramapo High School from September 24, 1985 through June 17, 1986.  (Mandziuk Decl., ¶15).  Although Plaintiff testified at his deposition that he had attended Ramapo High School during the fall semester of 1985, (Gaston Dep., 70:6-71:16), he did not indicate on either his application, initial background questionnaire, or supplemental background questionnaire that he had attended Ramapo High School.  (Gaston Dep., 72:25-73:6; Mandziuk Dep. 72:18-73:6; see also, Goodman Decl., Ex. C, D, E).  The New Jersey State Police background investigation questionnaire directs the applicant to:  "[l]ist chronologically (most recent dates first) all schools attended, grades 9 through 12 [and] submit the form provided requesting records from all high schools [the applicant] attended." (Goodman Decl., Ex. D, p.8 (emphasis in original); Gaston Dep., 73:8-18; Mandziuk Dep., 66:3-10). In the section of the background investigation questionnaire directing the applicant to provide the names of the schools he or she attended, Plaintiff listed that he went to school in Haiti. (Goodman Decl., Ex. D, p.8). At the bottom of page 8 of the background investigation questionnaire, there is a line annotated "Additional Information" and there are two check boxes, one labeled "yes" and the

other labeled "no". Plaintiff placed an "X" in the box marked "no." (Gaston Dep., 73:24-6; Goodman Decl., Ex. D, p.8).

During Plaintiff's supplemental background investigation, it was also revealed that Plaintiff had, on two occasions, provided his automobile insurance company with incorrect addresses. (Mandziuk Declaration, ¶¶17-19). Plaintiff testified that between March 2001 and April 2003, he resided at 7431 85th Road, Woodhaven, New York 11421. (Goodman Decl., Ex. F, Gaston Dep., 89:18-25).  During that period of time, Plaintiff owned a 1997 Nissan that was registered in the State of New York. The address on the registration document was 7431 85th Rd., Woodhaven, NY 11421, the address at which Plaintiff testified he lived between March 2001 and April 2003. (Goodman Decl., Ex. F, Gaston Dep., 90:10-18, 91:8-14, 94:25-95:8; Goodman Decl., Ex. H). The New York State Insurance Identification Card, effective October 20, 2002 through April 20, 2003, for the same 1997 Nissan as indicated on the registration document, shows Plaintiff's address as 223 Hollywood Avenue, Valley Stream, New York 11581. (Goodman Decl., Ex. F, Gaston Dep., 90:19-91:9; Goodman Decl., Ex. H). A second New York State Insurance Identification Card, effective April 20, 2001 through October 20, 2001, for the same 1997 Nissan as indicated on the registration document, shows Plaintiff's address 250 W. Merrick Rd., Apt 4L, Freeport, NY 11520. (Goodman Decl., Ex. F, Gaston Dep., 94:15-95:16; Goodman Decl., Exhibit H). Plaintiff further testified that during the period running from March 2001 through April 2003, he primarily garaged the 1997 Nissan in the street near his residence at 7431 85th Road in Woodhaven, New York. (Goodman Decl., Ex. F, Gaston Dep., 96:11-18).

-10-

When questioned about the use of the Valley Stream and Freeport addresses in connection with his automobile insurance, Plaintiff stated to the investigator that he used those addresses to get cheaper insurance and that "everyone does it" and "no one is squeaky clean." (Mandziuk Declaration, ¶19).  Plaintiff contends that his insurance company, State Farm, allowed him to use a different mailing address to obtain insurance, however, the record is devoid of evidence to support this contention.  Plaintiff avers that Trooper Mandziuk and Depersia misrepresented and manipulated this fact to create a bias against him, but the record and accompanying exhibits demonstrate that Plaintiff did in fact submit an incorrect address to his insurance company.

During the course of the investigation, Trooper Mandziuk's investigation also revealed discrepancies in connection with Plaintiff's application for a Florida driver's license.  Plaintiff testified that he obtained a Florida driver's license in or about November 1995. (Goodman Decl., Ex. F, Gaston Dep., 98:9-12).  Plaintiff testified that he moved to Florida and got a job the next day in or about November 1995. (Goodman Decl., Ex. F, Gaston Dep., 98:9-99:18). Plaintiff provided Florida Motor Vehicles with the Florida address of his mother-in-law in connection with his application for a Florida drivers license. (Goodman Decl., Ex. F, Gaston Dep., 102:24-103:2). Plaintiff failed to include this address on his background investigation questionnaire. (Mandziuk Decl., ¶20; Goodman Decl., Ex. D; Goodman Decl., Ex. F, Gaston Dep., 103:3-13, 104:1-5). The New Jersey State Police background investigation questionnaire, on page 6, instructed Plaintiff to list, "[i]n chronological order, starting with most recent past residence, state each and every previous residence since birth (include college residence, summer homes, military residences, etc.)" (Goodman Decl., Ex. D; Goodman Decl., Ex. F, Gaston Dep.,

103:3-13).  Plaintiff did not list the Florida address as a past residence on the background

investigation questionnaire.  The investigation further revealed that because Plaintiff never lived

in Florida, he did not meet the State of Florida's requirements for obtaining a driver's license.

(Mandziuk Decl., ¶20).  Plaintiff argues that he never committed automobile insurance fraud in

Florida, however, it is undisputed that his Florida driver's license was obtained using a false

address.

        The supplemental investigation also revealed that on the background investigation

questionnaires he submitted in connection with his application Plaintiff failed to list an

altercation he had with his wife. (Mandziuk Decl., ¶16). During the course of the investigation it

was uncovered that in the summer of 1999, Plaintiff and his wife were involved in a physical

altercation during which he was struck by his wife.  The investigation disclosed that Plaintiff

called the police, but he left before they arrived. (Mandziuk Decl., ¶16; Mandziuk Dep.,

81:24-82:9). Plaintiff testified that in or around 1999, he was involved in an incident with his

wife during which time she threw a telephone at him. (Goodman Decl., Ex. F, Gaston Dep.,

114:11-20). Question 83 of the New Jersey State Police background questionnaire completed by

Plaintiff on August 29, 2001, asks:  "[h]ave you ever been involved in a personal relationship in

which you were threatened, assaulted, harassed or where you sought a domestic violence

complaint, temporary restraining order or final restraining order against another person?"

(Goodman Decl., Ex. F, Gaston Dep., 116:13-24; Goodman Decl., Ex. D). Plaintiff's response to

this question was, "no." (Goodman Decl., Ex. F, Gaston Dep., 116:250-117:5, 115:15-17).

        Trooper Mandziuk's investigation also revealed that prior to attaining citizenship,

Plaintiff applied for a Social Security Card on five separate occasions and that he changed some

-12-

portion of his personal information on each of those occasions. (Mandziuk Decl., ¶11).

Information that was changed included Plaintiff's place of birth, mother's name, father's name,

and his date of birth. (Mandziuk Decl., Ex. A, pp. 2-2b).  The supplemental background

investigation also disclosed that on an application for a National Security Position that Plaintiff

completed for the Federal Bureau of Investigation ("FBI"), Plaintiff listed his father as possibly

living in Belgium.  This information was not included on Plaintiff's New Jersey State Police

background investigation questionnaire. (Mandziuk Decl., ¶13).

In addition to the items detailed above, Section XIII of the supplemental investigation

report prepared by Trooper Mandziuk is entitled, "Automatic Disqualifications." (Mandziuk

Dep., 121:17-122:8; Mandziuk Decl., Ex. A, p. 26).  Trooper Mandziuk marked the "Yes" box

next to Item Number 10 of the Automatic Disqualifications.  Item 10 provides: "The Applicant

committed fraud in applying for or receiving any benefits administered by a federal , State or

local, or local government agency." (Mandziuk Dep., 122:8-17; Mandziuk Decl., Ex. A, p. 26).

Similarly, Trooper Mandziuk place a mark in the "Yes" box next to Item Number 24 of

the Automatic Disqualifications.  Item 24 provides: "The Applicant omitted, misstated, or falsely

stated any information, in writing or orally, to the Division during the course of the application

process.  The Applicant will be disqualified for misrepresenting or omitting information which

would constitute one of the above grounds for automatic disqualification.  In the case of other

omissions, misstatements or false statements, the Division will afford the Applicant an

opportunity to explain the apparent misrepresentation." (Mandziuk Dep., 125:17-9; Mandziuk

Decl., Ex. A, p. 28).

Trooper Mandziuk telephoned Plaintiff and asked him to provide written explanations for the misrepresentations and discrepancies he had identified during his investigation. (Mandziuk Dep., 128:8-19; Mandziuk Decl., Ex. A, p. 28). Plaintiff questioned Trooper Mandziuk as to why he had to provide such information and ultimately sent Trooper Mandziuk a letter in which he advised that he would not be sending any additional documentation. (Mandziuk Dep., 128:20-21, 129:12-130:14; Mandziuk Decl., Ex. A, page 18A; Mandziuk Decl., Ex. B). Plaintiff's letter, dated November 21, 2002, stated that, "if a final decision cannot be made with my previously completed background investigation and with the information and documents I have just provided you in the supplemental and post-supplemental questionnaires, I will have no choice but to ask the N.J.S.P. to remove my name from the hiring process. (Mandziuk Dep., 130:12-132:1; Goodman Decl., Ex. B; Mandziuk Decl., ¶21; Mandziuk Decl., Exhibit B).

Trooper Mandziuk's involvement with Plaintiff's application process ended on or about January 3, 2003, when he completed the supplemental applicant investigation report. (Mandziuk Decl., ¶22).  Trooper Mandziuk avers that his findings, conclusions and opinions as stated in the supplemental background investigation report were in no way based upon Plaintiff's national origin. (Mandziuk Decl., ¶10).

An Executive Review Board was convened on January 21, 2003, in connection with Plaintiff's application for position of recruit with the New Jersey State Police.  Trooper R. DePersia, State Police Badge Number 4786, prepared an "Executive Review Board Presentation Form" in connection with Plaintiff's application. (Goodman Decl., Ex. I, Richard DePersia Dep. 23:8-24, 44:8-19, June 12, 2007; Goodman Decl., Ex. J).  Information contained in the executive review board presentation form was obtained from Plaintiff's background investigation,

supplemental background investigation, and any memos contained in the background investigation file. (DePersia Dep., 26:7-14)  Trooper DePersia also presented an executive review summary to the Executive Review Board on January 21, 2003, (Goodman Decl, Ex. K, Michael Deitche Dep. 20:14-21:6, June 12, 2007), which summarized and distilled the findings of the background investigation.  (Goodman Decl., Ex. L, Keith Vuono Dep. 37:11-38:1, June 12, 2007).  In addition to preparing the executive review summary, Trooper DePersia also had available to him the background investigation reports in order to answer any questions the Executive Review Board may have had regarding the investigation. (Vuono Dep., 37:13-38:1).

The Executive Review Board is made of up captains and lieutenants who review marginal or questionable applications for entry into the New Jersey State Police Academy. (Goodman Decl., Ex. M, Marshall Brown Dep., 25:4-8).  Then Captain (now Major) Marshall Brown was a member of the review board which considered Plaintiff's application. (Goodman Decl., Ex. M, Brown Dep., 5:11-16, 24:23-25:1, 26:10-13, June 11, 2007; Goodman Decl., Ex. N).  Major Brown voted that Plaintiff was not qualified for the New Jersey State Police. (Brown Dep., 26:16-18).  The executive review summary summed up the reasons why Major Brown voted to not qualify the Plaintiff. (Brown Dep., 26:22-27:2).  Lieutenant Keith Vuono was also a member of the Executive Review Board that reviewed Plaintiff's application. (Vuono Dep., 23:9-24).  Lt. Vuono also voted Plaintiff "not qualified," (Vuono Dep., 23:22-24:6), based upon the comments on the executive review summary. (Vuono Dep., 37:2-12).  Lieutenant Michael Deitche ("Deitche") was the third member of the Executive Review Board that considered Plaintiff's application. (Deitche Dep., 21:15-11).  The three members of the Executive Review Board,

Lieutenant Deitche, Captain Brown, and Lieutenant Vuono, each voted Plaintiff "not qualified." (Deitche Dep., 21:8-22:4).

On January 24, 2003, Lieutenant Colonel Lori Hennen-Bell, on behalf of the Superintendent's Office, concurred with the recommendation of the Executive Review Board and added the comment, "not qualified." (Brown Dep., 27:3-6, 27:12-28:11; Deitche Dep., 23:1-5). On March 27, 2003, a letter signed by Major Carmelo V. Huertas, Commanding Officer, Division Staff Section, Division of State Police, was sent to Plaintiff stating: "We regret to inform you that you have not been accepted for the position of recruit within the 130th New Jersey New Jersey State Police Selection Process. After careful review of all available information, we regret to inform you that you fail to meet Division standards for employment at this time," (Goodman Declaration, Exhibit O; Gaston Dep., 81:5-83:2).

## III.   SUMMARY JUDGMENT STANDARD

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding whether summary judgment should be granted, the Court considers "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," Fed. R. Civ. P. 56(c), and construes all facts and inferences in the light most favorable to the nonmoving party. Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). The Court's function "at the summary judgment stage . . . is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). To successfully defend

against a motion for summary judgment, a plaintiff cannot merely rely on the unsupported

allegations of the complaint, and must present more than the "mere existence of a scintilla of

evidence" in his favor. Id. at 252.

**IV.    DISCUSSION**

In his Complaint, Plaintiff alleges that Defendant failed to hire him based on his national

origin. (See generally, Compl.).  Plaintiff's Complaint is unclear as to the legal basis of his claims

and fails to specifically plead a statutory cause of action against Defendant.  Nonetheless, the

Court will liberally construe Plaintiff's Complaint because he has filed this action pro se.  The

Court's interpretation of Plaintiff's Complaint is guided by a review of the record, including

Plaintiff's EEOC Charge of Discrimination, in which he claimed that he was being discriminated

against on the basis of national origin (Goodman Decl., Ex. Q, EEOC Charge), and Plaintiff's

deposition, in which he testified that his claim is that Defendant discriminated against him on the

basis of national origin. (Gaston Dep. 78:9-79:11, 204:910-205:3, 206:13-20).  Thus, for the

purposes of the Court's analysis, it will construe Plaintiff's Complaint as bringing claims of

discrimination under Title VII and NJLAD.  First, the Court will discuss the parities' pending

motions for Summary Judgment, then it will turn to the issues of punitive damages, Plaintiff's

requests for injunctive relief, and Plaintiff's petition to amend its pleadings with additional

causes of action.

**A.    EMPLOYMENT DISCRIMINATION STANDARD UNDER TITLE VII
       AND NJLAD**

The United States Supreme Court, in McDonnell Douglas Corp. v. Green, 411 U.S. 792,

802 (1973), developed the burden-shifting analysis to be used in Title VII cases. The McDonnell

<u>Douglas</u> analysis is also used in claims of discrimination brought under NJLAD. <u>See</u> <u>Esposito v.</u> <u>Twp. of Edison</u>, 306 N.J. Super. 280 (App. Div. 1997); <u>Maiorino v. Schering-Plough Corp.</u>, 302 N.J. Super. 323, 345 (App. Div.), certif. denied 152 N.J. 189 (1997); <u>Giammario v. Trenton Bd.</u> <u>of Ed.</u>, 203 N.J. Super. 356, 361 (App. Div. 1985), (citing <u>Peper v. Princeton University Bd. of</u> <u>Trustees</u>, 77 N.J. 81 (1978), certif. denied, 102 N.J. 336 (1985), cert. denied, 475 U.S. 1141 (1986)).

The standard used to analyze a Title VII failure to hire claim was articulated by the Court of Appeals for the Third Circuit in <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994):

> In a case of failure to hire or promote under Title VII, the plaintiff first "must carry the initial burden under the statute of establishing a prima facie case of [unlawful] discrimination.  This may be done by showing:  (i) that he belongs to a [protected category]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."  If the plaintiff succeeds, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection."

<u>Id.</u> (citing <u>McDonnell Douglas</u>, 411 U.S. at 802.).  The Court in <u>Fuentes</u> went on to define the burden shifting framework:

> The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.  The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff.  Once the employer answers its relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion).

<u>Id.</u> (citations omitted).

In evaluating Plaintiff's claims this Court must first determine whether Plaintiff has presented a prima facie case of employment discrimination by going through the aforementioned prongs. Second, if a prima facie case is established, the Court must analyze the facts proffered by the Defendant to determine whether it has articulated legitimate, non-discriminatory reasons for its decision not to hire Plaintiff. Finally, if Defendant has provided legitimate reasons for not hiring Plaintiff, the Court must analyze whether Plaintiff is able to rebut Defendant's proffered non-discriminatory reasons to show that they were pretextual.

### i. PLAINTIFF'S FAILS TO SHOW A PRIMA FACIE CASE OF EMPLOYMENT DISCRIMINATION

In order to establish a prima facie case of discriminatory failure to hire under both Title VII and the NJLAD, a plaintiff must show "(i) that he belongs to a [protected category]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." Id. Summary judgment is warranted in this matter because Plaintiff cannot establish a prima facie case of discrimination.

The first prong of a prima facie case of discriminatory failure to hire requires "that [plaintiff] belong[] to a [protected category]." Id. In pertinent part, 42 U.S.C. 2000e-2 states that:

> It shall be an unlawful employment practice for an employer--
>
> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, sex, or *national origin.*

42 U.S.C. 2000e-2 (2008).  The accompanying regulations define national origin discrimination as "including, but not limited to, the denial of equal employment opportunit[ies] because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group."  29 C.F.R. § 1606.1 (2008).  In this case, Plaintiff states that he is a native born Haitian and that he was discriminated against by the New Jersey State Police because his family in Haiti could not be reached by telephone during the course of his background investigation. (Pl.'s Mot. Summ. J., Br. p.27).  This is sufficient to establish that Plaintiff is a member of a protected class and satisfies the first prong of the Court's inquiry.

The second prong of a prima facie case of discriminatory failure to hire requires "that [plaintiff] applied and was qualified for a job for which the employer was seeking applicants." Fuentes, 32 F.3d at 763.  Here, the record demonstrates that Plaintiff did not have the qualifications necessary to receive an offer of employment from the New Jersey State Police. Page one of the initial application completed by the Plaintiff provides that a candidate "will be rejected from the selection process who has intentionally made a false statement or practiced, or attempted to practice any deception or fraud in this initial application, in any examination, interview, application, or in securing eligibility for appointment.  Any misstatement of fact is reason for disqualification from employment."  (Goodman Decl., Ex. C, Initial Application). Page two of the initial application further provides: "[a]pplicants must have a good reputation and be of sound moral character. . . . [a]n applicant's background will be carefully investigated

-20-

and the answers which are supplied on the application and written examination are subject to verification." (Id.).

Similarly, the New Jersey State Police background investigation questionnaire completed by the Plaintiff directs the candidate to "[a]nswer every question . . . .  A candidate will be rejected from the selection process who has intentionally made a false statement or practiced, or attempted to practice any deception or fraud in this questionnaire, in any examination, interview or in securing eligibility for appointment.  Any misstatement of fact is reason for disqualification for employment."  (Goodman Decl., Ex. D, Background Investigation Questionnaire).  The second page of the questionnaire provides:  "NOTICE: . . . Your failure to neatly and thoroughly complete the require information will be reflected in a negative manner." (Id.)(emphasis added). Page two of the background investigation questionnaire continues:

> APPLICANT NOTICE: You are required to promptly report any significant changes in your personal background information or involvement in any incident which might result in criminal or civil charges being brought against you, while your are an applicant in the New Jersey State Police selection process. This includes, but is not limited to: changes in your address, employment, or marital status; motor vehicle accidents or summonses; charges or convictions for any offense/crime; civil matters (bankruptcies, liens/judgements, etc.); or involvement in any incident which could lead to criminal or civil charges.

(Id.)(emphasis added).

The New Jersey State Police background investigation supplemental questionnaire similarly provides that a candidate will be rejected from the selection process who has intentionally made a false statement or practiced, or attempted to practice any deception or fraud in the supplementary questionnaire.  (Goodman Decl., Ex. E, Background Investigation

-21-

Supplemental Questionaire).  The supplemental questionnaire further provides: "Any

misrepresentation of fact is reason for disqualification from employment." (Id.)

As discussed at length, supra pp. 8-13, Trooper Mandziuk was assigned to conduct a

supplemental background investigation of the Plaintiff, which he completed on or about January

3, 2003. (Mandziuk Decl., ¶4-6). Trooper Mandziuk's investigation revealed numerous

omissions and misstatements in the documentation provided by the Plaintiff in connection with

his application and background investigation questionnaires. (See Mandziuk Decl., ¶¶11-20).

Trooper Mandziuk also identified several instances of possible fraud on the part of the Plaintiff.

(See Mandziuk Decl., ¶¶12, 17, 18, 19, 20).  Furthermore, after highlighting these issues,

Trooper Mandziuk afforded Plaintiff an opportunity to provide written explanations of the

identified misrepresentations, omissions and discrepancies.  Plaintiff declined to do so.  Trooper

Mandziuk documented the results of his investigation, a summary of which was provided to the

Executive Review Board that reviewed Plaintiff's application. (Mandziuk Decl., Ex. A;

Goodman Decl., Ex. I, DePersia Dep., 23:8-24, 26:7-14, 44:8-19; Goodman Decl., Ex. J,

Executive Review Presentation Form; Goodman Decl., Ex K, Deitche Dep. 20:14-21:6).  The

members of the Executive Review Board recommended that Plaintiff was not qualified, based on

the findings contained in Plaintiff's background investigations and the documents obtained

during the course of the application process. (Goodman Decl. Ex. L, Vuono Dep., 23:22-24:6;

Goodman Decl. Ex. M, Brown Dep., 26:16-18, 27:3-6; Goodman Decl., Ex. K, Deitche Dep.,

21:8-22:4). The office of the New Jersey State Police Superintendent concurred with the

recommendation.  Plaintiff was therefore found to be "not qualified" for employment as a state

trooper. (Goodman Decl. Ex. M, Brown Dep., 27:12-28:11; Goodman Decl. Ex. K, Deitche Dep., 23:1-5).

The evidence in the record, as discussed above, demonstrates that Plaintiff was not qualified for employment as a New Jersey State Trooper.  Because Plaintiff was not qualified to be offered entry into the New Jersey State Police Academy, the second prong required to establish a prima facie case of employment discrimination under Title VII and NJLAD has not been met.   Therefore, Plaintiff's claims fail as a matter of law on this prong alone.

The third and fourth prongs necessary to show a prima facie case of employment discrimination cannot be satisfied unless the second prong is first met.  The third and fourth prongs require "that, despite his qualifications, he was rejected," and "that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications," respectively.  Fuentes, 32 F.3d at 763.  In this case, Plaintiff was rejected as an applicant, however he was not qualified for the position, therefore the third prong is not satisfied.  Similarly, the forth prong is not satisfied because, although it is obvious that the Defendant continued to seek and hire applicants, there is no evidence to prove that they hired applicants with Plaintiff's qualifications, which were insufficient to pass the N.J. State Trooper background check and good moral character requirements.

In conclusion, the evidence in the record provides undisputed, definitive support to show that Plaintiff was not qualified to be offered entry to the New Jersey State Police Academy.  As such, Plaintiff cannot meet the second, third and fourth prongs of the standard for establishing a prima facie case of discrimination as set forth in Fuentes.  Accordingly, the Court grants

summary judgment in favor of the New Jersey State Police dismissing Plaintiff's Title VII and

NJLAD claims with prejudice.

> **ii.     THE NEW JERSEY STATE POLICE HAD LEGITIMATE,
> NON-DISCRIMINATORY REASONS TO DENY PLAINTIFF'S
> APPLICATION FOR EMPLOYMENT**

Even if the Court were to assume, arguendo, that Plaintiff could establish a prima facie

case of discrimination, the record demonstrates that the New Jersey State Police had legitimate

nondiscriminatory reasons for not offering Plaintiff employment.  As stated above, Plaintiff's

background investigations revealed numerous discrepancies, omissions, and several instances of

possible fraud. (See Def.'s Fact St. ; Mandziuk Decl., ¶¶ 11-21).

The New Jersey State Police informed Plaintiff in a letter dated March 27, 2003 and

signed by Major Carmelo V. Huertas, Commanding Officer, Division Staff Section, Division of

State Police, Plaintiff "that you have not been accepted for the position of recruit within the

130th New Jersey State Police Selection Process. After careful review of all available

information, we regret to inform you that you fail to meet Division standards for employment at

this time." (Goodman Decl., Ex. O, Letter; Gaston Dep., 81:5-83:2).  In a second letter dated

June 9, 2003, signed by Major Ralph Rivera, Jr., Commanding Officer, Community Partnerships

Section, Division of State Police, Plaintiff was informed:  "The reason for your disqualification,

at this time, is the totality of the derogatory information collected during your background

investigation including two incidents of insurance fraud, work history, and the inability to

interview any of your relatives." (Goodman Decl., Ex. P, Letter; Gaston Dep. 86:15-87:10).

The New Jersey State Police application, applicant background investigation

questionnaire, and supplemental background investigation questionnaire all make it very clear

that any misstatement of fact on the part of the applicant is reason for disqualification.

Furthermore, an applicant's commission of fraud in applying for or receiving any benefits

administered by a federal, State or local, or local government agency is reason for automatic

disqualification. (See Mandziuk Dep., 122:8-17; Mandziuk Decl., Ex. A, Supplemental

Applicant Investigation Report, p. 26).

   It is undisputed that Plaintiff omitted information concerning a change in his marital

status, i.e., that he and his then-wife had initiated divorce proceedings, his attendance at Ramapo

High School, his alleged Florida residence, a physical altercation with his then-wife, and his

alleged addresses in Freeport and Valley Stream New York, in either his initial or supplemental

background investigation questionnaire. (Mandziuk Decl., ¶¶7-20; Gaston Dep., 21:17-22:3,

24:9-13, 25:6-15, 51:3-8, 54:8-16, 70:6-10, 72:25-73:6, 73:19-23, 89:18-91:14, 96:11-18,

98:9-99:18, 102:24-104:5, 114:11-20, 115:15-117:5).

   Further, the New Jersey State Police application completed by the Plaintiff provides that

an applicant "will be rejected from the selection process who has intentionally made a false

statement or practiced, or attempted to practice any deception or fraud in this initial application,

in any examination, interview, application, or in securing eligibility for appointment. Any

misstatement of fact is reason for disqualification from employment." (Goodman Decl., Ex. C,

Initial Application). Page two of the initial application further provides: "Applicants must have a

good reputation and be of sound moral character. . . . An applicant's background will be carefully

investigated and the answers which are supplied on the application and written examination are

subject to verification."  (Id.)  In this case, the supplemental background investigation revealed

that Plaintiff had used false addressees in connection with his automobile insurance in order to

obtain cheaper rates, had used an address at which he did not reside in order to obtain a Florida

driver's license, and had changed information in connection with his social security applications.

(Mandziuk Decl., ¶¶12, 13, 17, 18, 19, 20).

Thus, the Court finds that the warnings on the various applications about omitting or

submitting false information combined with Plaintiff's misrepresentation or omission of

information including addresses, previous education, marital status, and domestic violence

incidents demonstrate that the New Jersey State Police had multiple legitimate,

non-discriminatory reasons not to give Plaintiff an offer for entry into the New Jersey State

Police Academy.  The New Jersey State Police has satisfied its burden of production under the

McDonnell Douglas burden shifting framework by its production of a multitude of affidavits and

exhibits in support of the reasons why Plaintiff was not hired.  See, e.g., Reeves v. Sanderson

Plumbing Products, Inc., 530 U.S. 133, 142 (2000).  As such, the New Jersey State Police has

met its burden under McDonnell Douglas.  See McDonnell Douglas, 411 U.S. at 802-03.

> **iii.  PLAINTIFF HAS FAILED TO SHOW THAT THE LEGITIMATE,
> NON-DISCRIMINATORY REASONS PROFFERED BY DEFENDANT TO
> DENY HIS APPLICATION FOR EMPLOYMENT WERE A PRETEXT
> FOR DISCRIMINATION**

In Title VII action, to discredit employer's proffered legitimate nondiscriminatory reasons

for adverse employment action, "plaintiff must demonstrate such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons

for its action that reasonable fact finder could rationally find them unworthy of credence, and

hence infer that employer did not act for asserted non-discriminatory reasons." Fuentes, 32 F.3d

at 765.  Although Plaintiff alleges a litany of weak explanations for his apparent misstatements,

-26-

Plaintiff has not produced any competent evidence to support an assertion that the stated reasons for not hiring him were merely a pretext.

Plaintiff summarily asserts that the New Jersey State Police initiated a supplemental background investigation as a pretext to discriminate against him, but offers little evidence in support of this contention. Plaintiff avers that his supplemental background investigation was a pretext because of an alleged comment made to him by Trooper Mandziuk that Trooper Lauther "did not know how to catch Haitians and other foreigners who lie and cheat the system." (Compl.) Plaintiff also relies on the fact that the New Jersey State Police rejected him partially because his mother and sister could not be contacted in Haiti. However, the Court holds that none of these contentions are significant enough to demonstrate weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the Defendant's proffered legitimate reasons to reject Plaintiff, such that a fact finder could rationally find them unworthy of credence. The reasons for his rejection are numerous, well founded, and have been discussed in detail throughout this opinion. Therefore Plaintiff cannot meet his burden of persuasion under the McDonnell Douglas framework. The evidence in this case demonstrates that Plaintiff can neither establish a prima facie case of discrimination nor offer sufficient evidence to rebut the legitimate non-discriminatory reasons for not hiring him. See Reeves, supra, 530 U.S. at 147. Accordingly, the Court grants summary judgment in favor of Defendant, and denies Plaintiff's motion for summary judgment.

**B.    PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES**

To the extent that Plaintiff's Complaint can be construed as seeking punitive damages against Defendant, the Court finds that such claims must be dismissed under both Title VII and

NJLAD.  This is because the Court has determined, supra, (a) that Plaintiff has failed to establish a prima facie case of employment discrimination; (b) and that even if the Court were to find that Plaintiff established a prima facie case, Plaintiff has failed to show that Defendant's legitimate, non-discriminatory reasons for not hiring him were pretextual.  These findings by the Court moot the issue of punitive damages.  Nonetheless, there are two additional grounds for the dismissal of Plaintiff's potential punitive claims.

First, under Title VII there is an exemption provision for punitive damages providing that "a complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision)."[3]  42 U.S.C. § 1981a(b)(1).  Here, it is undisputed that the Defendant is a government agency created by the state of New Jersey.  As such, Defendant is exempt from punitive damages under Title VII.

Second, under NJLAD, a Plaintiff may recover punitive damages from a public entity. Cavuoti v. New Jersey Transit Corp., 161 N.J. 107, 113-14 (1999).  However, there are two prerequisites before a Court can award punitive damages in a discrimination suit under NJLAD: "(1) 'actual participation in or willful indifference to wrongful conduct on the part of upper management;' and (2) 'proof that the offending conduct is especially egregious.'" Id. at 113 (citing Rendine v. Pantzer, 141 N.J. 292, 314 (1995)).  In this case, Plaintiff has alleged that there was wrongful conduct on the part of Trooper Mandziuk in conducting a supplemental investigation of Plaintiff.  Plaintiff does not allege that the upper management of the New Jersey

___

[3]While punitive damages are available against individuals under Title VII,  no individuals are named as defendants in this case.  Plaintiff did previously make a motion to amend his Complaint to add an individual as a defendant, however, in an order dated June 18, 2007, relief was denied by Judge John J. Hughes, U.S.M.J.

State Police participated or committed any wrongful conduct.  Therefore, any claims for punitive

damages against the New Jersey State Police under NJLAD would also be dismissed on these

grounds.

Thus, to the extent the Complaint can be construed as alleging punitive damages, the

Court grants summary judgment in favor of the Defendant dismissing any such claim both under

Title VII and NJLAD.

### C.    PLAINTIFF IS NOT ENTITLED TO AN EXTENSION OF TIME TO PLEAD ADDITIONAL CAUSES OF ACTION

In Plaintiff's cross motion for Summary Judgment, he requests an extension to file

additional claims under the United States Constitution, New Jersey Constitution, New York

Constitution, NJTCA, NJLAD, and NJCEPA against the Defendant.  However, on June 18, 2007

this same request was ruled upon and denied by the Honorable Judge John J. Hughes, U.S.M.J.[4]

Plaintiff subsequently filed an appeal to the Third Circuit and on October 11, 2007 an order was

---

[4]In Plaintiff's original Motion for an Extension to file Certain Claims and to Amend his Complaint, he asked for leave to amend his Complaint to add State Trooper Mandziuk as an additional defendant.  (See Pl.'s Mot. for an Ext. to File Certain Claims, Apr. 10, 2007).  It is unclear from Plaintiff's original motion whether he intended to bring additional claims against only Mandziuk or against Mandziuk and the New Jersey State Police.  (Id.)  In Plaintiff's current motion, he again asks the Court for an Extension to file Certain Claims and to Amend his Complaint, but this time specifically requests leave to file claims against both individuals and entities. (Pl.'s Mot. Summ. J. p. 42).  The similarity of Plaintiff's original motion and the present one before the Court indicates that Plaintiff is merely renewing his previous arguments, which were denied in their entirety by Judge Hughes.  However, even if the Court were to treat Plaintiff's current motion as the first instance where Plaintiff petitioned the Court to grant an extension to file certain claims against Defendant New Jersey State Police, the Court would deny such motion for the same reasons stated in Judge Hughes', June 18, 2007 order, i.e. - undue delay because Plaintiff brings this motion well beyond the discovery deadline and futility because all tort claims are beyond the statute of limitations in New York and New Jersey.  See Hill v. City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005) (holding that a court may deny a Motion to Amend if:  (1) there has been undue delay, bad faith, or dilatory motive; (2) if the amendment would be futile; or (3) if there would be prejudice to the other party).

issued denying Plaintiff's appeal for lack of jurisdiction.  Plaintiff failed to file an appeal of

Judge Hughes' ruling to this Court, and accordingly, the Court denies Plaintiff a second bite at

the proverbial apple at this late stage of litigation.

  **D.**  **PLAINTIFF'S PETITION FOR INJUNCTIVE RELIEF**

  In Plaintiff's brief, he petitions the Court to issue an injunction ordering the Defendant to:

(1) remove all of Plaintiff's personal information from their Motion for Summary Judgment; and

(2) to stop using what Plaintiff characterizes as unsubstantiated allegations to injure or damage

Plaintiff's reputation.  It appears to the Court that Defendant has already redacted Plaintiff's

personal information from its submissions.  However, to the extent that Plaintiff's personal

information (i.e. - birth date, social security number) has been unnecessarily made available to

the public via Defendant's Motion for Summary Judgment and accompanying papers, the Court

directs the Defendant to review all of its submitted documents, and submit a redacted copy as a

substitute.  Plaintiff's petition for injunctive relief to stop Defendant from allegedly injuring

Plaintiff's reputation is vague, and further, this Court has given no credence to Plaintiff's

allegations of defamation based upon the rulings herein and thus, the Court finds injunctive relief

unnecessary and inappropriate.

**V.**  **CONCLUSION**

  For the reasons stated above, Defendants' Motion for Summary Judgment is granted and

Plaintiff's Complaint is dismissed in its entirety.  All claims, including Plaintiff's Title VII and

NJLAD claims are hereby dismissed with prejudice due to the Plaintiff's failure to set forth a

prima facie case.  As a consequence, Plaintiff is not entitled to injunctive relief or punitive

damages.  The Court also denies Plaintiff's belated request to add additional claims against the

Defendant.  An appropriate order will follow.


 Dated: February 21st, 2008


                                                    s/ Freda L. Wolfson
                                                    The Honorable Freda L. Wolfson
                                                    United States District Judge